UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

AMY WILSON,

       Plaintiff,

vs.                                                  Case No.  23-cv-

TYRONE BYNUM and
LAW OFFICES OF TYRONE BYNUM, PLLC;

       Defendants.
_____/

Matthew L. Turner (P48706)
SOMMERS SCHWARTZ, P.C.
One Towne Square, 17th Floor
Southfield, MI  48076
(248) 746-4039
mturner@sommerspc.com
_____/

## COMPLAINT AND JURY DEMAND

The Plaintiff AMY WILSON, by her attorneys, SOMMERS SCHWARTZ, P.C., complains against the above-named Defendants, and states as follows:

## JURISDICTION AND VENUE

1. Plaintiff, Amy Wilson (Wilson), is a resident of the City of Ocala, County of Marion, and State of Florida.

2. Defendant, Law Offices of Tyrone Bynum, PLLC, ("Bynum Law") is a Michigan professional limited liability company with principal offices in the Kent County, Michigan.

3. Defendant Tyrone Bynum ("Bynum") is a licensed Michigan attorney doing business in Kent County and at all relevant times was employed by and practicing at the Law Offices of Tyrone Bynum, PLLC.

4. Plaintiff, Amy Wilson, is a citizen of Florida and the individual Defendant, Tyrone Bynum, is a resident of Michigan.

5. Bynum Law is a Michigan Professional Limited Liability Company with its principal place of business in Kent County, MI. The amount in controversy, without interest and costs, exceeds Seventy-Five Thousand ($75,000.00) Dollars, and therefore, this Court has original jurisdiction under 28 U.S.C. §1332.

6. The events giving rise to this cause of action occurred in the City of Grand Rapids, County of Kent and State of Michigan.

7. Venue is proper in the southern division of this district pursuant to 28 U.S.C. §1391(b)(2) and W.D. Mich. LCivR 3.2.

## COMMON FACTUAL ALLEGATIONS

8. On June 14, 2019, Wilson was involved in an argument with patrons at a BP gas station after leaving her job as a bartender.

9. After leaving the gas station, Wilson was driving her boyfriend's vehicle when she was identified and pulled over by police officers from the City of Grand Rapids.

10. A firearm belonging to her boyfriend was discovered on the passenger floor and the officers determined that Wilson was intoxicated.

11. Wilson was transported to the Kent County Correctional Facility where she was booked at 3:23 a.m. and lodged for OWI/CCW/MDOP-operating a vehicle while intoxicated, carrying a concealed weapon and malicious destruction of property.

12. After an arrest warrant was obtained, Wilson was placed in a restraint chair and blood was drawn at 4:18 a.m.

13. Wilson complied with all orders during the blood draw and was returned to her cell upon completion of the blood draw without issue.

14. At approximately 6:30 a.m., Wilson got into a verbal altercation with a male inmate in the holding area while she was making a phone call.

15. Kent County Sheriff deputies intervened and locked down the male inmate.

16. The deputies involved were Cory Johnston, Nicholas Ogle, Mikal MacDonald and Rahel Stechebar.

17. The deputies demanded that Wilson hang up the phone and return to her cell.

18. While standing still, in a non-threatening posture, without any hand or arm movements, Wilson was violently gang tackled to the ground, was subject to the use of force to restrain her and was dragged to a holding cell where her head was slammed into the ground by the deputies.

19. The entire event is captured on Kent County Correctional Facility surveillance video.

20. All four deputies involved prepared incident reports which document a different sequence of events with respect to the force used and which are inconsistent with the surveillance video.

21. The tackling of Wilson to the ground, the force used to restrain her and her being dragged back to a cell where her head was slammed on the ground was clearly excessive, unnecessary and a violation of her constitutional rights.

22. Jail nurse Felicia Johnson documented bruising on Wilson's chin and under her chin, on both wrists and red marks from cuffs. She documented the following visible injuries: arms, kneed on head 4x after being down, jaw pain."

23. On the Medical Screening Form nurse Johnson noted that Wilson had a recent head injury "from the officer tonight post force of use filled out." She also noted facial bruising, wrist swelling, and "crying for being treated bad by officers and police man."

24. Wilson was released from the jail at approximately 3:00 p.m. on June 14, 2019.

25. After being released from the jail, Wilson presented to Metro Health Hospital Emergency Department at 7:52 p.m. on June 14, 2019.

26. The Emergency Department records reflect a chief complaint of "Arm injury (pt reports left arm pain post being grabbed by police. also complains of left sided jaw pain and chin pain."

27. The history of present illness indicates that Wilson complained that officers at the jail grabbed her by her left arm, forced her to the ground, and proceeded

4

to knee her four times in the head. The nurse that reported the history observed swelling to the left wrist and bruising to the chin.

28. X-rays revealed a fracture of the left elbow and she was diagnosed with a strain of the wrist.

29. Wilson was placed in a sling, instructed on rest, ice, compression, elevation and was placed on Tramadol for pain. She was referred to orthopedic surgery as an outpatient.

30. On January 20, 2020, Wilson retained Tyrone Bynum and the Law Offices of Tyrone Bynum, PLLC to represent her "in the prosecution and/or settlement of Client's claim(s) against KENT COUNTY GOVERNMENT AND KENT COUNTY SHERIFF defendant(s) for THE FOLLOWING INTENTIONAL TORTS; NEGLIGENCE, ASSAULT AND ASSAULT AND BATTERY, AND INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS and to commence and maintain a lawsuit for that purpose in an appropriate state or federal court." The referenced document in in the possession of the Defendants.

31. In February 2020, Wilson moved to Florida.

32. On July 27, 2020, Wilson presented to the Ocala Health Emergency Department for left elbow pain. Her left shoulder, left upper arm, left elbow and left wrist were noted to be swollen and tender. She was prescribed Gabapentin for pain management.

33. On September 21, 2020, Wilson sought psychological treatment to address "traumatic experience affecting mood." The traumatic experience was the June

5

14, 2019 incident at the Kent County Correctional Facility and she was diagnosed with moderate depression.

34. Wilson was prescribed medication to treat her depressed mood.

35. Throughout 2021 Wilson continued to have difficulties with her arm as a result of this incident, including being unable to fully extend her arm along with continued elbow pain and stiffness.

36. On April 4, 2023, Wilson underwent two surgical procedures on her left elbow, a lacertus fibrosus release and median nerve decompression.

37. As a proximate result of the use of excessive and unreasonable force, Wilson suffered serious physical injuries, including all of those identified above, and suffered mental anguish, mental anxiety, humiliation, embarrassment and depression.

38. As a proximate result of the Deputies use of excessive and unreasonable force, Wilson did receive medical attention, medication, medical and nursing care, all in an effort to cure and alleviate the injuries and attending pain and suffering.

39. All of the medical treatment Wilson underwent resulted in her incurring medical bills, which are proximately related to the excessive force event at the Kent County Correctional Facility.

40. All of the injuries specified above may be of a permanent nature, except those of a superficial nature, which may cause Plaintiff to sustain future expenses for hospitalization, medication, nursing, medical care, and treatment.

41. These injuries may or could aggravate physical and mental conditions not presently known to Plaintiff, which could be permanent.

42. Plaintiff sustained a loss of earning capacity, and may suffer a diminution of earning capacity in the future, if her injuries prove to be permanent.

43. Prior to this incident, Plaintiff enjoyed relatively good health, and was able to enjoy the recreational and social activities which were normal for a person of her age group; however, the injuries sustained in this incident have caused a cessation of these pleasures, and in the future her participation may continue to be limited due to the permanency of her injuries.

**UNDERLYING LAWSUIT**

44. That pursuant to 42 U.S.C. Section 1983:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or territory, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof, to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit and equity, or other proper proceeding for redress.

45. Wilson had a valid and viable cause of action against the individual Kent County Sheriff Deputies, Cory Johnston, Nicholas Ogle, Mikal MacDonald and Rahel Stechebar, under the United States Constitution, particularly under the provisions of the Fourth and Fourteenth Amendments to the Constitution of the United States and under Federal law, particularly the Civil Rights Act, Title 42 of the United States Code, Section 1983, and under the Constitution of the State of Michigan, Article 1, Section II.

46. Deputies Cory Johnston, Nicholas Ogle, Mikal MacDonald and Rahel Stechebar acting under color of state law, violated Wilson's rights by using excessive and unreasonable force while Plaintiff was being detained at their jail facility causing her to suffer physical injuries in violation of the Michigan and federal Constitutions,

7

particularly the Fourth and Fourteenth Amendments to the United States Constitution, which is actionable under 42 U.S.C. § 1983.

47. Deputies Cory Johnston, Nicholas Ogle, Mikal MacDonald and Rahel Stechebar are persons within the meaning of 42 U.S.C. Section 1983.

48. Deputies Cory Johnston, Nicholas Ogle, Mikal MacDonald and Rahel Stechebar were always relevant to this action, acting under color of Michigan statute, ordinance, regulations, custom and usage within the meaning of 42 U.S.C. Section 1983, during the imprisonment of Plaintiff at the Kent County Correctional Facility, all under the direction, support, knowledge and authority of the Kent County Sheriff's Department.

49. Each deputy employed by the Kent County Sheriff's Department possessed the power to prevent, or aid in preventing, the commission of such wrongful acts, and accordingly, owed a duty to Wilson to prevent, aid in preventing, and/or attempt to prevent the commission of such wrongful acts.

50. The conduct of Deputies Cory Johnston, Nicholas Ogle, Mikal MacDonald and Rahel Stechebar, and each of them, deprived Plaintiff of the following rights, privileges and immunities secured by the Constitution of the United States:

    (a) The right of Plaintiff not to be deprived of life, liberty or property without due process of law secured by the Fourteenth Amendment to the Constitution of the United States.

    (c) The right of Plaintiff to be guaranteed equal protection under the laws secured by the Fourteenth Amendment to the Constitution of the United States.

51. The acts, conduct, and behavior of Deputies Cory Johnston, Nicholas Ogle, Mikal MacDonald and Rahel Stechebar were performed knowingly, intentionally,

and with deliberate indifference to Plaintiff's constitutionally protected rights; therefore, Wilson should have been entitled, by virtue of 42 U.S.C. Section 1983, to compensatory damages in whatever amount was found to be fair and just, and by virtue of 42 U.S.C. Section 1988, to punitive damages and statutory attorney fees.

52. On October 12, 2020, Bynum filed a lawsuit in the United States District Court for the Western District of Michigan on Wilson's behalf against KENT COUNTY SHERIFF, KENT COUNTY DEPUTIES (TBD), KENT COUNTY GOVERNMENT.

53. The lawsuit indicated that it arose under the above-referenced 42 USC 1983.

54. The lawsuit alleged that "individual defendant 1" and "individual defendant 2" were employed by the Kent County Sheriff's' Department as a deputy sheriff.

55. Defendant Bynum never identified individual defendant 1, individual defendant 2 or any of the other Kent County Deputies who were involved in this unconstitutional excessive force event.

56. The Complaint alleges that Wilson's injuries were a result of KCCF Corrections Officers intentionally engaging in excessive force, a violation of Plaintiff's 4th amendment right against unreasonable seizure.

57. On September 8, 2021, Defendant Bynum filed a Motion to Compel Discovery (ECF #38). One of the items sought in the motion was the identity of the individual deputies who were involved in the above referenced incident.

58. On September 23, 2021, Defendant Bynum re-filed the Motion to Compel Discovery (ECF #40), which again sought crucial information to pursue the case, including the identity of the individual deputies.

9

59. On September 24, 2021, the court entered an Order denying the motion without prejudice because Defendant Bynum failed to comply with the local court rules prior to filing a non-dispositive motion (ECF #41).

60. Defendant Bynum never complied with the rule, never refiled the motion and never obtained the identity of the individual deputies who used excessive force on his client.

61. Defendant Bynum took no depositions in the underlying case and conducted no discovery to prove the *Monell* claim against the Defendants that he named in the lawsuit.

62. On October 26, 2021, Defendants in the underlying case, KENT COUNTY SHERIFF, KENT COUNTY DEPUTIES (t/b/d) and COUNTY OF KENT, filed their Motion for Summary Judgment as to all claims filed by Defendant Bynum on behalf of Wilson (ECF #45 and 46).

63. On October 27, 2021, Defendant Bynum filed his response on Wilson's behalf to Defendants' Motion for Summary Judgment (ECF #47).

64. The only exhibits attached to the response was a Declaration from Wilson, a Complaint filed by Wilson with Internal Affairs, along with emails in support of the internal affairs complaint and the same affidavit from Chief Deputy Kevin Kelley that was submitted in support of the Defendants' motion.

65. Neither the response nor the exhibits demonstrated that Plaintiff had created a genuine issue of material fact for trial.

66. On May 19, 2022, Judge Beckering granted the Defendants' Motion for Summary Judgment as to the Kent County Defendants and entered a Show Cause

Order as to why the action should not be dismissed with prejudice as to Defendants "Kent County Deputies (TBD)" for lack of prosecution." (ECF #53)

67. The Court relied upon the well-established case law beginning with *Monell v. Dep't of Soc. Servs. of City of New York,* 436 U.S. 658 (1978) that a municipality cannot be liable under a theory of respondeat superior; it can only be liable for "its own wrongdoing." In order to be liable the Plaintiff must prove that the municipality had an illegal policy or custom.

68. It is well established and well known by lawyers handling civil rights matters that in a case brought pursuant to 42 U.S.C. Section 1983, the individual person who is acting under color of state law must be sued individually and that in order to prevail against the municipality an illegal custom or practice must be shown.

69. Defendant Bynum responded to the Oder to Show Cause on June 1, 2022 (ECF #54). Defendant Bynum provided a doctor's note that he underwent "emergent surgery" on 7/23/21 and that he was hospitalized from 7/23/21 through 7/28/21 and that he was to remain off work for three months. (ECF #54 pg. id. 357)

70. Judge Beckering considered Defendant Bynum's medical condition, but found that, "while the health challenges that Plaintiff's counsel describes are not inconsequential, the court determines that counsel nonetheless acted with reckless disregard for the effect of his conduct-or omissions-on this litigation." The Court also found that Defendant Bynum did participate in many aspects of litigating the case without identifying the deputies. Ultimately, Judge Beckering found that "dismissal with prejudice is both appropriate and warranted in the circumstances at bar." Judge Beckering dismissed the case with prejudice for lack of prosecution. (ECF #56)

71. Judgment in favor of all Defendants was entered on June 21 2022 (ECF #57) and no appeal was taken from that judgement.

## COUNT I LEGAL MALPRACTICE

72. Wilson will separately address each of the four elements of the tort of legal malpractice.

### A.     Attorney-Client Relationship

73. An attorney-client relationship arose between Wilson and Defendants under the facts based upon the signed retainer agreement identified, infra.

74. Defendants obviously represented Wilson when they filed the civil rights lawsuit on her behalf.

75. This relationship gave rise to a duty owed by Defendants to Wilson as a matter of law.

76. This duty included, among other things, zealous representation, acting in the client's best interests, loyalty, honesty, and compliance with the standard of ordinary learning judgment and skill required of an attorney handling a civil rights claim under 42 USC Section 1983.  In short, Defendants should have done the necessary due diligence to identify the individual deputies through FOIA requests, discovery requests and motion practice along with conducting the necessary discovery to prove the claim under *Monell.*

77. Defendants held themselves out as experienced trial attorneys in this area and were, therefore, obligated to handle the litigation in a manner that effectuated the client's interests and goals which were to seek full compensation and recovery for her injuries and damages, including punitive damages.

### B. Negligence in the Representation

78. Defendants' representations failed to comport with the above standards in numerous ways.

79. The Defendants did not serve a FOIA request prior to filing the lawsuit. The response to the FOIA request would have identified the individual deputies involved.

80. After filing the lawsuit, Defendants did not conduct the necessary discovery to identify the individual Defendants.

81. Defendants did not comply with local court rules when initially filing the Motion to Compel and did not follow the guidance of the Court when the motion was dismissed without prejudice to meet and confer with defense counsel to attempt to resolve the issues, and then, if unable to resolve the issue, to re-file the motion with the necessary disclosure.

82. Defendants did not obtain any documents and did not take any factual depositions in the underlying case.

83. Defendants failed to take a 30B(6) deposition of the corporate defendant.

84. As a result of the Defendants' failure to identify the individual deputies, they were not included in the Complaint and Defendants failed to conduct discovery in a timely manner so that they could move to amend the complaint to add the individual deputies.

85. Of critical importance and in material breach of their legal duties, Defendants were unable to properly respond to Defendants' Motion for Summary

13

Judgment and the Court's Show Cause Order because of their failure to prosecute the litigation.

86. In short and in sum, Defendants' representation utterly failed to achieve Wilson's goal to obtain full compensation from the deputies that violated her clearly established constitutional right to be free from excessive force while in their custody.

### C. **Proximate Causation**

87. The Defendants' negligence was a cause in fact of Wilson's damages and injuries.

88. The Defendants' negligence was a proximate cause of Wilson's damages and injuries.

89. Had Defendants complied with the standard of practice required of a reasonable attorney, the case would not have been dismissed and Wilson would have successfully proven the underlying case against the individual deputies and the County.

### D. **Damages – the Fact and Extent of Injury**

90. Wilson has been proximately damaged by Defendants' negligence/malpractice.

91. Wilson suffered physical injuries, mental and emotional injuries, medical bills, lost earning capacity and loss of household services as well as future damages for all of the above that would have been recovered in the underlying action if Defendant Bynum had complied with the standard of practice required of an attorney handling a civil rights case.

92. Wilson would have also recovered punitive damages and attorney fees in the underlying action had Defendant Bynum complied with the standard of practice.

WHEREFORE, Plaintiff respectfully requests that this Honorable Court enter judgment against the Defendants, in whatever amount in excess of Seventy-Five Thousand ($75,000.00) Dollars the Plaintiff is found to be entitled, plus interest, costs and attorney fees.

### **JURY DEMAND**

Plaintiff hereby demands a trial by jury of all issues in this action.

SOMMERS SCHWARTZ, P.C.

By: /s/ Matthew L. Turner
Matthew L. Turner (P48706)
Attorneys for Plaintiff
One Towne Square, 17th Floor
Southfield, MI  48076
(248) 746-4039

Dated:  November 13, 2023